# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

DESHAWNA J. LYLES,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

    Defendant.

Case No. 11-CV-72-FHM

## OPINION AND ORDER

Plaintiff, Deshawna J. Lyles, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1] Plaintiff's May 3, 2006, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Gene M. Kelly was held August 12, 2008. By decision dated January 22, 2009, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on December 7, 2010. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## **Background**

Plaintiff was 43 years old on the date of alleged onset of disability and 48 on the date of the ALJ's denial decision. She has an 11th grade education and formerly worked as school bus driver, mobile security guard, and housekeeper. She claims to have been unable to work since October 3, 2003 as a result of degenerative disorders of the back, neck shoulders, feet, and hands. She also experiences anxiety and depression.

## **The ALJ's Decision**

The ALJ determined that Plaintiff retains the residual functional capacity (RFC) to perform light work as defined in the regulations, except that she is restricted to no more than occasional overhead reaching, bending, stooping, climbing, squatting, crouching, crawling, or kneeling. She is limited in the ability to twist or turn her head and needs to work in an environment with easy access to a restroom. Further, her mental functioning restricts her to the performance of simple routine work related functions or unskilled work.

The ALJ found that Plaintiff was unable to perform her past relevant work. Based on the testimony of the vocational expert, the ALJ determined that there are a significant

number of jobs in the national economy that Plaintiff could perform with these limitations. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

### **Plaintiff's Allegations**

Plaintiff asserts that: the ALJ's step-three finding is not supported by substantial evidence; the ALJ improperly rejected vital portions of Dr. Vaught's opinion; and the ALJ failed to perform a proper credibility analysis.

### **Analysis**

#### Step Three Analysis

The Listings of Impairments (Listings) describe, for each of the major body systems, impairments which are considered severe enough to prevent a person from performing any gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App.1. At step three of the sequential analysis, the ALJ is required to discuss the evidence in the context of the relevant listing and the reasons for determining that Plaintiff does not meet a listing. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). It is well established that it is Plaintiff's burden to show that her impairment is equivalent to a listing. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). It is also well established that *all* of the specified medical criteria must be matched to meet a listing. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1988).

Plaintiff argues that the ALJ failed to properly analyze the medical evidence concerning whether Plaintiff met listing 1.04A which addressed disorders of the spine, particularly the effects of nerve root compression. Listing 1.04 requires the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 CFR Pt. 404, Subpt. P, App. 1, §1.04A. Plaintiff states that a cervical MRI report generated in April 2007 demonstrates she meets the listing criteria. The report contains level-by-level findings and contains the conclusion that the report shows postoperative changes with mild C3/4 canal stenosis. [R. 293-94]. Plaintiff argues that the record also demonstrates she suffers the neuro-anatomic distribution of pain, limitation of motion, motor loss with muscle weakness, and sensory loss required to meet listing 1.04A. In support, Plaintiff points to her complaints of numbness and tingling, right biceps strength and right grip strength of 4/5, and decreased sensation to light touch.

The ALJ did not discuss listing 1.04A. The failure of the ALJ to specifically discuss this listing does not, however, require remand.[2] As previously stated, a claimant must meet

---

[2] At the hearing Plaintiff's counsel discussed the April 2007 MRI results and concluded, "I think we're at a step five. Inability to hang onto a forty hour work week." [R. 323]. Counsel's remarks are not the basis for affirming the ALJ's decision with regard to listing 1.04A. However, an ALJ is normally entitled to rely on the claimant's counsel to structure and present the case. See *Hawkins v. Chater,* 113 F.3d 1162, 1164 (10th Cir.1997). Plaintiff's argument that the evidence "overwhelmingly" demonstrates that she meets listing 1.04A is not persuasive in light of counsel's comments at the hearing.

4

all of the criteria for a listing to apply. As the following discussion demonstrates, Plaintiff does not meet the criteria for listing 1.04A.

Plaintiff underwent neck surgery in March 2004. In June 2004 a nerve conduction study was performed by Jodi Yelverton, MD to determine the cause of Plaintiff's continued complaints of arm pain and hand numbness. Dr. Yelverton reported that on physical exam Plaintiff's strength was 5/5, except for the right biceps and right grip which were 4/5. [R. 191]. Following testing, Dr. Yelverton reported: "Today's study is normal. There is no evidence of median or ulnar neuropathy; plexopathy; or radiculopathy involving the right upper extremity." [R. 193]. On receipt of Dr. Yelverton's report, Plaintiff's surgeon released Plaintiff to perform regular duties with no restrictions. [R. 194]. In April 2006, J. Wade, MD, a neurologist, conducted an examination and reported: "this patient has a normal neurological examination except for the subjective complaint of pain in the right arm." [R. 222].[3] In October 2008 a consultative physical examination was performed by Beau Jennings, DO. Dr. Jennings reported Plaintiff had some restriction of the range of motion in her neck and shoulders, [R. 310, 311], but she could effectively oppose the thumb to fingers, could manipulate small objects, and could effectively grasp. [R. 312]. He also noted Plaintiff demonstrated good grip and pinch strength and that there was no muscle atrophy. These records show that Plaintiff has not met the burden of showing a neuro-anatomic distribution of pain. Nor is there motor loss, atrophy, or muscle weakness attributable to a disorder of the spine. Thus, Plaintiff does not meet listing 1.04A. Furthermore, the undersigned is persuaded that the listings should be read in conjunction

---

[3] The ALJ discussed the neurological examination and nerve conduction study in connection with the listings analysis. [R. 13].

with the introductory section that precedes the listing criteria. The evidence Plaintiff relies on for her argument that she meets listing 1.04A does not meet the standards outlined in the introductory section.

The point of the listings is that they outline the medical findings that will demonstrate functional difficulties so severe that when the criteria are met, the claimant is presumptively disabled without the need of further analysis. Since the medical findings may be outcome determinative, it is important that the findings be made with a degree of certainty and specificity to warrant reliance on them as the sole basis for a disability decision. To that end, the criteria for a listing should be read in light of the introductory definitions that precede the listing criteria when such definitions are provided.[4]

The listings addressing the musculoskeletal system have an extensive prefatory section that clearly defines the terms used, and addresses examination, documentation, and testing requirements. 20 CFR Pt. 404, Subpt. P, App. 1; §1.00 (B)(2)(a) defines what is meant by functional loss in the musculoskeletal listings:

> Regardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the . . . inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment. The inability to . . . perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months.

The type of diagnosis and evaluation is addressed in §1.00 (C)(1):

> Diagnosis and evaluation of musculoskeletal impairments should be supported, as applicable, by detailed descriptions of

---

[4] The court rejects Plaintiff's argument that the "legislative history" of the listings regulations must be consulted to determine whether the listing should be interpreted in light of the introductory section. Nothing is lost to Plaintiff by a strict interpretation of the listing requirements as the disability analysis proceeds from that point to consider other evidence of functional abilities.

> the joints, including ranges of motion, condition of the musculature (e.g., weakness, atrophy), sensory or reflex changes, circulatory deficits, and laboratory findings, including findings on x-ray or other appropriate medically acceptable imaging.

The information required for a physical examination sufficient to establish listing criteria is addressed in §1.00D:

> The physical examination must include a detailed description of the rheumatological, orthopedic, neurological, and other findings appropriate to the specific impairment being evaluated. These physical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation; e.g., "He says his leg is weak, numb."
>
> \* \* \*
>
> Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation. Care must be taken to ascertain that the reported examination findings are consistent with the individual's daily activities.

Section 1.00 (K) contains information pertaining to the specific listing under consideration here:

> Disorders of the spine, listed in 1.04, **result in limitations because of distortion of the bony and ligamentous architecture of the spine and associated impingement on nerve roots (including the cauda equina) or spinal cord**. Such impingement on nerve tissue may result from a herniated nucleus pulposus, spinal stenosis, arachnoiditis, or other miscellaneous conditions. Neurological abnormalities resulting from these disorders are to be evaluated by referral to the neurological listings in 11.00ff, as appropriate. (See also 1.00B and E.)
>
> 1. Herniated nucleus pulposus is a disorder frequently associated with the impingement of a nerve root. **Nerve root compression results in a specific neuro-anatomic distribution of symptoms and signs depending upon the nerve root(s) compromised.**

7

20 CFR Pt. 404, Subpt. P, App. 1. (emphasis supplied). When the requirements of listing 1.04A are read in conjunction with quoted information from the introductory section, it is abundantly clear that whatever functional loss Plaintiff suffers, cannot be viewed as resulting from impingement of the spinal cord as is required to meet listing 1.04A.

## Rejection of Dr. Vaught's Opinion

Larry Vaught, Ph.D., conducted a psychological examination of Plaintiff and completed a Mental Medical Source Statement form in which he rated Plaintiff's ability to perform twenty different mental activities over a normal workday and workweek on an ongoing basis. On the form various activities may be rated, as follows: no limitation; no significant limitation; moderate limitation; marked limitation; and severe limitation. [R. 301]. A "moderate limitation" is defined as "affects but does not preclude ability to perform basic work functions." *Id*. Dr Vaught found Plaintiff to have moderate limitations in 5 areas which include: (1) the ability to accept instruction and respond appropriately to criticism from supervisors; and (2) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [R. 302]. In the denial decision the ALJ inaccurately stated that Dr. Vaught found Plaintiff had "no significant limitation" in these two areas. [R. 12].

Plaintiff argues that, based on the Tenth Circuit's holding in *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007) the ALJ's misstatement of Dr. Vaught's opinion requires remand. According to Plaintiff, since the RFC did not contain any limitation related to the two areas of moderate limitation, the ALJ essentially rejected Dr. Vaught's opinion on those points without providing any reason for doing so.

8

The court agrees that the result here is controlled by *Haga* which requires reversal of the ALJ's decision and remand for consideration of the two areas of moderate limitation that were not addressed in the ALJ's decision. In *Haga*, as in this case, a consultative examiner marked on a form that the plaintiff had moderate limitations in several areas. The RFC included limitations that adopted some of the moderate limitations but not others and the ALJ's decision contained no explanation as to why some of the moderate limitations were rejected. The *Haga* Court found that, even though moderate restrictions do not preclude work related activity in the area rated as moderate, a moderate rating is not the same as no restriction. The Court also rejected the reasons offered by the Commissioner that may have supported the RFC finding because the ALJ did not provide those explanations. 482 F.3d at 1207-08.

In reversing the ALJ's decision and undersigned makes no determination that the omitted moderate limitations must necessarily be separately included in the RFC. It may be, as the Commissioner brief suggests, that the ALJ fully incorporated the additional moderate restrictions by limiting Plaintiff to the performance of simple routine work related functions or unskilled work. However, according to *Haga* any such explanation must come in the first instance from the ALJ, not the Commissioner's attorneys.

### Credibility

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings." Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir.2005) (citation, brackets, and internal quotation marks omitted).

Plaintiff argues that the ALJ's credibility analysis consisted almost entirely of boilerplate language. The court disagrees. The ALJ cited numerous grounds, tied to the evidence, for the credibility finding. The ALJ noted documentation of persistent complaints of shoulder pain, and compared those complaints to the objective evidence of only mildly limited range of motion and the ability to effectively grasp and manipulate small objects. [R. 15]. The ALJ noted the evidence documented limited use of the upper right arm due to pain which were accounted for in the RFC limitation of only occasional overhead reaching and in the lifting and carrying restrictions. [R. 15-16]. The ALJ also noted that the kind and quantity of medication and medical treatment was not consistent with what would be expected in instances of debilitating and incapacitating pain. [R. 16]. The ALJ thus properly linked his credibility finding to the record, therefore the undersigned finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## Conclusion

The Commissioner's decision is REVERSED and the case is REMANDED to the Commissioner to enable the ALJ to address the moderate limitations contained in the Mental Medical Source Statement completed by Dr. Vaught which were not addressed in the ALJ's decision.

SO ORDERED this 17th day of April, 2012.

_Frank H. McCarthy_
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

10